RAYMOND SEVERSON,

       Plaintiff,

v.                                    Case No. 14-CV-1141

HEARTLAND WOODCRAFT, INC.

       Defendant.

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR RULE 11 SANCTIONS

### I.    BECAUSE SEVERSON CONCEDES THAT HIS FMLA CLAIMS LACK EVIDENTIALRY SUPPORT, DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE GRANTED

Plaintiff's counsel has not even attempted to articulate any facts or legal theories that would support the inclusion of his FMLA claims in this action. To the contrary, Severson's counsel is now, belatedly, requesting leave from the court to withdraw these claims. Given the lack of any evidentiary support for these claims, Defendants Motion for Partial Summary Judgment must be granted. The only arguments raised in opposition to the Motion are irrelevant and unsupportable equitable claims that Defendant's Motion for Partial Summary Judgment is inappropriate because:

1. Severson has moved for leave to amend to withdraw his FMLA claims;
2. Defendant has also filed a Rule 11 Motion seeking dismissal of the FMLA claims;
3. Severson's counsel "agreed" to withdraw the FMLA Interference claim, and "reassess" its positon on the FMLA retaliation claim;
4. Defendant filed its Motions before the discovery cut off and without consulting plaintiff's counsel regarding their willingness to withdraw the FMLA claims; and

Case 2:14-cv-01141-LA   Filed 08/19/15   Page 1 of 15   Document 37

5. Defendant refused agree to a stipulation allowing plaintiff to amend his complaint to withdraw the FMLA claims unless the stipulation preserved Defendant's right to pursue its Motion for Rule 11 Sanctions.

## A. Defendant's Motion for Partial Summary Judgment is not Moot.

Defendant's Motion for Partial Summary is obviously not "moot" based on Plaintiff's Motion for Request for Leave to File an Amended Complaint because the Court has not ruled on that Motion, and may well not have the opportunity to rule on that Motion until after a decision has been issued on Defendant's Motions. Severson's Motion for Leave to Amend was filed August 6, 2015. Pursuant to Civil L. R. 7, Defendant has 21 days (until August 27, 2015) to file its response to the motion, and Plaintiff would then have another 14 days (to September 10, 2015) to file a reply. By that time, Defendant's Motion for Partial Summary Judgment may have been granted (since there is no substantive objection to Motion) and Plaintiff's Motion for Leave to withdraw the FMLA claims may well be the motion that is moot.

## B. Defendant's Motion for Partial Summary Judgment is not Duplicative of its Rule 11 Motion

Plaintiff's cites no support for the claim that Defendants' Rule 11 Motion negates the need for a Motion for Summary Judgment to evaluate the merits of the claims in question. In fact, the courts that have addressed this issue have consistently pointed out that motions addressing the merits of claims serve a separate function from Rule 11 motions involving the same underlying claims, and that dismissal of a claim as a sanction under Rule 11 may prejudice the plaintiff because the moving party would have had the benefits of a summary judgment without being required to follow all of the summary judgment procedures designed to protect the non-moving party. In *Safe–Strap Company, Inc. v. Koala Corporation*, 270 F.Supp.2d 407, 416-19 (S.D.N.Y. 2003) the court stated:

> The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions...should not be employed...to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) .....
>
> The distinct approaches which courts employ in the disposition of Rule 11 and summary judgment motions underscore the significance of the

2

foregoing principle. There are meaningful differences between the purposes and standards associated with Rule 11, which governs the imposition of certain types of sanctions, and Rule 56, which governs motions for summary judgment. (cites omitted)....

In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action. *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359. Rather, the court determines "a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." Id. ....

In contrast, the "mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." (cites omitted) .... When a court evaluates whether a genuine issue of material fact exists which would preclude judgment as a matter of law, the court examines "the evidence in the light most favorable to, and draw[s] all inferences in favor of, the non-movant." ...

In light of the significant differences between the procedures and standards associated with summary judgment and those associated with the imposition of sanctions, the dismissal of this action on the merits via Rule 11 would subject Safe–Strap to prejudice. Such a dismissal would allow Koala to receive all the benefits of a summary judgment despite the fact that Koala chose to bypass the strictures associated with the summary judgment procedure. Moreover, a dismissal on the merits runs counter to the precepts of Rule 11, which do not call upon a court directly to judge the merits of a lawsuit.

See also: *EEOC v. The Pines of Clarkston, Inc.*, 2014 WL 6612375 (E.D. Mich., 2014)( "In general, a Rule 11 motion is not a proper substitute for a dispositive motion and should not be employed ... to test the sufficiency or efficacy of allegations in the pleading; other motions are available for those purposes.")

Obviously, it is possible for a court to decide that a claim is subject to dismissal based on the rules governing summary judgment under Rule 56 and not impose sanctions against a party under Rule 11 for initiating that claim. Thus the two motions are not duplicative, and it is appropriate to file both motions in connection with the FMLA claims asserted in Plaintiff's Complaint.

### C. Counsel's Informal "Agreement" to Withdraw Severson's FMLA Interference Claim and "Reassess" their Positon on his FMLA Retaliation Claim does not Preclude Partial Summary Judgment Dismissing those Claims or Prevent Defendant from Pursuing Rule 11 Sanctions

3

Although Plaintiff's counsel did indicate, at the very end of the 21-day "safe harbor" period following service of Defendants' Rule 11 Motion, that they intended to withdraw Severson's FMLA Interference claim, and "reassess" their positon on his FMLA retaliation claim, they took no action to pursue either of these actions until three weeks *after* Defendant filed the current Motions. Ninety-one (91) days passed from the date Plaintiff's counsel received Defendant's Rule 11 Motion until they belatedly filed their Motion for Leave to Amend.

The indication in the May 27, 2015 letter from Plaintiff's counsel that they "intended" withdraw Severson's FMLA Interference claim, and "reassess" their positon on his FMLA retaliation claim was not enforceable and did not negate the fact that Heartland Woodcraft was required to defend against those frivolous claims throughout the discovery period. When it became clear that: 1) Plaintiff had no evidentiary support for either of his FMLA claims; 2) no reasonable inquiry had been undertaken by his counsel before these claims were asserted; and 3) Plaintiff's counsel were not withdrawing these claims even after all depositions in the case were concluded, it was entirely appropriate for Defendant to file both the Motion for Partial Summary Judgment and the Motion for Rule 11 Sanctions.

Some courts have held that Rule 11 sanctions are appropriate even though a Motion for Leave to Amend the Complaint to withdraw the offending claims is filed before the expiration of the 21-day safe harbor period, but not granted before the Court considers the opposing party's Rule 11 Motion. In *Harris v. Franklin–Williamson Human Services, Inc., et.al,* 97 F.Supp.2d 892, 910 (S.D. Ill., 2000) the Court stated:

> Defendants Mayhew, LIUNA and SILDC *served* their Rule 11 motion for sanctions on Harris' attorneys on May 25, 1999. Twenty-one days later on June 16, 1999, Mayhew, LIUNA and SILDC filed their motion for sanctions with the Court. Harris argues that because she moved for leave to file a second amended complaint on June 15, 1999, Mayhew, LIUNA and SILDC violated the twenty-one day rule by filing the motion with the Court. The Court does not agree with Harris.
>
> As of June 16, 1999, the Court had not granted Harris leave to file a second amended complaint. The proposed Second Amended Complaint did not supersede the First Amended Complaint, therefore, the First Amended Complaint was and still is the valid complaint on file. Harris did not appropriately correct or withdraw the allegations contained in the First Amended Complaint within the twenty-one day time period provided by the rule. The Court finds that Defendants Mayhew, LIUNA and SILDC properly filed their Rule 11 motion.

4

If a Motion for Leave to Amend filed within the 21-day safe harbor period does not protect a party from Rule 11 sanctions, an expression of "intent" to withdraw one claim and "reassess" another cannot preclude motions under Rule 11 and Rule 56.

### D. Defendant had no Obligation to "Consult" with Plaintiff's Counsel Prior to Filing its Motion for Partial Summary Judgment and Rule 11 Motion

Plaintiff's counsel suggests, without any citation to authority, that Defendant had some obligation to follow up and confirm that Plaintiff was not going to voluntarily withdraw his FMLA claims and unfounded factual allegations before filing the Motions now under consideration. No such obligation exists with respect to with either a motion for summary judgment or a Rule 11 motion.

The May 27, 2015 letter from Plaintiff's counsel, responding to the service of Defendant's Rule 11 Motion (Exhibit A to Declaration of Kelly Temeyer), indicated that Plaintiff would "reassess" his position on the FMLA retaliation claim following additional discovery. At that point in time Plaintiff's counsel had deposed 2 of the 3 Heartland representatives involved, directly or indirectly, in the decision to terminate Plaintiff's employment – owner Patrick Koness and Office Manager, Jennifer Schroeder. Both of those witnesses confirmed the legitimate, non-retaliatory and non-pretextual reason for Severson's termination. Counsel indicated an interest in deposing the third person who was indirectly involved - General Manager, Doug Lawrence.

Although Defendant could have filed its Motions immediately after the expiration of the 21-day "safe harbor" period on May 28, 2015, Defendant decided to grant Plaintiff's counsel the courtesy of deposing Mr. Lawrence to further confirm that there was no evidence supporting their FMLA retaliation claim in the hopes that they would then voluntarily dismiss their frivolous FMLA claims. When Plaintiff failed to take any action to withdraw their FMLA claims for more than two weeks after the June 30, 2015 deposition of Mr. Lawrence, Defendant finally proceeded to file its Motions on July 16, 2015.

Plaintiff's counsel's suggestion that Defendant somehow deprived them of the opportunity to do the right thing is unsupportable. Plaintiff's counsel wrongly included the FMLA claims in the Complaint without any evidence suggesting that they were legally supportable and without performing any reasonable investigation to uncover any such evidence. They knew, or should have known from their client's personnel file (which Severson requested

5

and received before Attorney Luzi, one of the named partners in the firm representing Severson in this action, filed the ERD Complaint on Severson's behalf) that Severson had received all the FMLA notices and leave he was entitled to. Plaintiff's counsel knew from Heartland's response to the ERD Complaint that Heartland had a legitimate and non-retaliatory reason for terminating Severson's employment – namely that his FMLA leave was exhausted and they needed to fill his position. (See pp. 10-12 of Heartland's ERD position letter attached as Exhibit J to the Supplemental Affidavit of David A. McClurg) Plaintiff's counsel should have known, if they had asked their client, that he was aware of no information to suggest that he had been terminated because he exercised his FMLA rights. (Severson dep. pp. 82-3) Despite this knowledge, they added the unfounded FMLA claims to their subsequent Complaint in this action, likely hoping to create added leverage for settlement.

Even though: 1) Defendant's responses to Plaintiff's extensive initial written discovery requests and the depositions of Koness and Schroeder confirmed the non-retaliatory reasons for Severson's termination; and 2) Severson's own deposition confirmed that he was aware of no evidence or information of any kind to suggest that he was terminated because he had exercised his FMLA rights, Plaintiff's counsel refused to withdraw the FMLA claims following service of Defendants Rule 11 Motion. They cannot put the blame for the Motions now at issue on Defendant's doorstep. Responsibility lies directly with Plaintiff's counsel.

### E. After the 21-Day "Safe Harbor" Period, Defendant had no Obligation to Enter a Stipulation Allowing Plaintiff to Withdraw his FMLA Claims that did not Protect Defendant's Right to Pursue Rule 11 Sanctions

Ironically, Plaintiff's counsel suggests that Defendant is responsible for "frustrating litigation, increasing costs and complicating legal issues in the case" by refusing to enter a stipulation that would waive Defendant's rights to pursue Rule 11 sanctions. Plaintiff's counsel conveniently ignore the fact that they were the ones that asserted the frivolous FMLA claims in the first place, and then refused to withdraw them in a timely manner when served with Defendant's Rule 11 Motion. The time to ask for such a stipulation was during the 21-day "safe harbor" period, not after forcing Defendant incur substantial legal fees to research, brief and file its Motion for Partial Summary Judgment and Rule 11 Motion.

Rule 11 is clear that protection from sanctions is afforded only if the challenged claims are withdrawn *within the safe harbor period*. *Sneller v. City of Bainbridge Island*, 606 F.3rd 636, 639 (9th Cir., 2010)  Rule 11(b) (2) provides:

> A motion for sanctions …must be served under Rule 5, but it must not be filed or be presented to the court *if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service* or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. (emphasis added)

A motion for leave to amend a complaint following the expiration of the safe harbor period will not protect the offending party from imposition of sanctions. *Olick v. Kearney*, 466 B.R. 680, 689-90 (E.D. Pa., 2011); *Jones v. Metropolitan School District of Decatur Township*, 905 F.Supp.2d 923, 940-941 (S.D. Ind., 2012)(Rule 11 sanctions appropriate even though unsupported claims were voluntarily withdrawn after the Rule 11 Motion was filed.); *Harris v. Franklin–Williamson Human Services, Inc., et.al*, 97 F.Supp.2d 892, 910 (S.D. Ill., 2000)(Motion for leave to amend filed within the safe harbor period but not granted prior to consideration of the Rule 11 Motion did not preclude consideration of the Motion.)

Given these clear rules, Heartland had no obligation to waive its right to pursue Rule 11 sanctions based on Plaintiff's counsel's belated attempts to seek leave to amend the Complaint after Defendant had filed its Motions for Partial Summary Judgment and Rule 11 Sanctions.

## II.  RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFF'S COUNSEL HAVE OFFERED NO EVIDENCE OR ARGUMENT TO SUGGEST THAT THE FMLA CLAIMS THEY ASSERTED WERE "WARRANTED" OR THAT THEY CONDUCTED A REASONABLE AND COMPETENT INQUIRY TO DETERMINE IF THERE WAS ANY FACTUAL OR LEGAL SUPPORT FOR THOSE CLAIMS

Rule 11 (b) provides, in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

7

> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery;

Plaintiff's response to Heartland's Rule 11 Motion is extraordinary in that it provides absolutely no argument to suggest that the FMLA claims Severson's counsel included in the Complaint were warranted by "existing law or a non-frivolous argument for the extension, modification or reversal existing law" and no evidence that counsel conducted any inquiry to determine if those claims were "warranted" or if there was any factual basis for their contention that Severson was terminated in retaliation for exercising his FMLA rights.

Plaintiff's counsel makes the bald and unsupported assertion that: "Plaintiff underwent (sic) a reasonable investigation and discovery related to these causes of action and made a strategical and legal decision to proceed with said causes of action." (Plaintiff's Response Memorandum in Opposition to Defendant's Motion to Impose Sanctions Pursuant to Rule 11, p. 6) However, they provide no inkling as to what that "reasonable investigation and discovery" entailed or how it supported their decision to include the FMLA claims in the Complaint signed by Scott Luzi, one of the named partners in the firm representing Severson.

The lack of any description of the nature of the inquiry that was allegedly performed is fatal to their defense of Defendant's Rule 11 Motion. Since Plaintiff's counsel admits that Severson received all the FMLA leave he was entitled to, and Plaintiff's counsel knew, or should have known from their client's personnel file that Severson had received all the required FMLA notices, it is unclear how Attorney Luzi could have thought that the FMLA interference claim was warranted. Plaintiff's counsel gives us no clue. It is perhaps worth noting that Attorney Luzi himself did not take on the task of explaining the nature of the inquiry that supported his representation that this claim was warranted. All the responsive briefs were signed by Attorney Temeyer, an associate who was not even with the firm when the Complaint was filed.

Further Attorney Luzi knew from Heartland's position letter submitted in response to Severson's ERD Complaint that Heartland had a legitimate and non-retaliatory reason for terminating Severson's employment – namely that Severson was unable to return to work after his FMLA leave was exhausted and Heartland needed to fill his position on a permanent basis because the temporary employee acting as the 2nd Shift Lead did not have the proper skill set to do the job and was responsible for excessive rework of products assembled on 2nd shift, low productivity on 2nd shift and decreased profits. (See pp. 10-12 of Heartland's position letter,

8

attached as Exhibit J to the Supplemental Affidavit of David A. McClurg) Given the fact that Severson was aware of no evidence or information to suggest that he was terminated because he had exercised his FMLA rights, (Severson dep. pp. 82-3) one is left to wonder what "reasonable investigation and discovery" it was that led Attorney Luzi to conclude, when he signed the Complaint, that he was "warranted" in alleging, at paragraph 122, that: "Defendant intentionally retaliated against Mr. Severson by terminating his employment for exercising his rights under the Family and Medical Leave act of 1993, as amended , 29 U.S.C. §§ 2601 *et seq*."

Again we have no clue as to the nature of the "investigation," if any, performed by Attorney Luzi to support his representation that this allegation was well founded because Plaintiff's counsel offers no explanation. Absent such an explanation the only reasonable assumption is that Attorney Luzi did not conduct a reasonable inquiry under the circumstances, and had no basis to believe that either the FMLA interference or retaliation claims were warranted.

III.     **RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFF'S COUNSEL HAVE OFFERED NO EVIDENCE SUPPORTING THEIR MULTIPLE FACTUAL ASSERTIONS THAT SEVERSON WAS ABLE TO RETURN TO WORK "IMMEDIATELY" AFTER HIS SURGERY OR THAT THEY CONDUCTED A REASONABLE AND COMPETENT INQUIRY TO DETERMINE IF THERE WAS ANY FACTUAL SUPPORT FOR THOSE ALLEGATIONS**

Severson's laminectomy surgery was performed on August 27, 2013, the same day that his FMLA leave expired. In an attempt to support their claim that Heartland interfered with Severson's FMLA rights by terminating him instead of returning him to his former position or a substantially similar position, Plaintiff's counsel repeatedly alleged that Severson would have been be able to return to work "immediately" after his surgery and "immediately" after the exhaustion of his FMLA leave. Given the nature of Severson's surgery and the strenuous nature of the work performed by the 2nd Shift Lead, these allegations were not only factually unsupportable, but ridiculous.

Severson admitted that he was told to no lifting whatsoever for the first week after his surgery, (Severson Dep., pp 42-43) and remained on morphine and oxycodone during that period. (Severson Dep., pp 37-38; Dep. Exh. 21) He could not climb stairs or rise from a seated position without assistance. (Deanne Severson Dep., p. 23) Dr. Hollowell would not have

released Severson to return to work under any circumstances immediately following his release form the hospital on August 28, 2013. (Hollowell Dep. p. 25) A Physical Capacities Evaluation Form completed a month after the surgery indicated that, even at that point of his recovery, Severson should ***never push, pull or carry anything weighing over one pound.*** (Hollowell Dep. pp. 17-18, Dep. Exh 47) Severson's surgeon testified that these restrictions would preclude Severson from returning to work in anything "remotely resembling his previously employment." (Hollowell Dep. pp. 19-20) Severson was not released to return to work in any capacity until October 17, 2013 – more than 7 weeks after his surgery - and then with a 20 pound lifting restriction. (Severson Dep., pp 47-49, 58; Dep. Exh. 23; Hollowell Dep. pp. 20-21, Dep. Exh. 48)

These facts are undisputed, and should have been known by Plaintiff's counsel if they had undertaken a reasonable investigation. Because Attorney Luzi's allegations regarding Severson's ability to return to work "immediately after his surgery" could, if "warranted," have been used to support Plaintiff's FMLA interference claim on the grounds that Heartland failed to return Severson to his position at the conclusion of his FMLA leave, Heartland was required to conduct extensive and expensive discovery to demonstrate that they were not only unsupported but totally unwarranted and frivolous. This discovery included extensive written Interrogatories, Requests for Production of Documents, Requests for Admissions, the deposition of Severson, his wife and his orthopedic surgeon, negotiations with and service of subpoena on Heartland's disability insurance carrier to obtain records relating Severson's short and long term disability claims, and review and analysis of Severson's extensive medical records and records relating to his application for and receipt of both short and long term disability benefits.

The only support that Plaintiff's counsel provides for the allegation that Severson could have returned to work "immediately" after his surgery is Severson's deposition testimony that he had performed some light household work during the period after his surgery, and thus thought he could return to work in a light duty capacity. In light of the overwhelming medical evidence that a man who has just undergone a major back surgery could not return to a strenuous manufacturing job "immediately" after surgery, including the fact that his doctor would not have release him to do so, Severson's alleged subjective belief that he could have returned to work "immediately" after his surgery did not justify the factual allegations that Attorney Luzi included in the Complaint.

Further, there is no evidence, representation or even suggestion that Severson's alleged ability to do light housework was revealed to his counsel in the course of their pre-filing investigation. The response to Heartland's Rule 11 Motion contains no indication that Plaintiff's counsel undertook any specific inquiry of any kind prior to filing the Complaint to determine if their factual allegations regarding Severson's ability to return to work had any evidentiary support. Attorney Luzi was clearly aware of nature of Severson's injury and subsequent back surgery, and that Severson had requested a two month extension of his FMLA leave to allow him to recover from that surgery. (*See*: page 2 of Severson's ERD positon letter, authored by Attorney Luzi, attached as Exh. F to the Affidavit of David A. McClurg in Support of Motion for Summary Judgment) In light of this knowledge, an "inquiry reasonable under the circumstances," as required by Rule 11, would clearly have revealed that there was no evidentiary support for the allegations in the Complaint that Severson could return to work "immediately" after his surgery or the end of his FMLA leave. The Rule 11 sanctions requested by Defendant are appropriate under these circumstances.

IV.    **RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFF'S COUNSEL HAVE OFFERED NO CREDIBLE EVIDENCE SUPPORTING THEIR ASSERTION THAT SEVERSON TOLD SCHROEDER DURING THEIR AUGUST 13, 2013 CONVERSTION THAT HE WOULD BE ABLE TO RETURN TO WORK IN A LIGHT DUTY CAPACITY "IMMEDIATELY" AFTER HIS SURGERY OR THAT THEY CONDUCTED A REASONABLE AND COMPETENT INQUIRY TO DETERMINE IF THERE WAS ANY FACTUAL SUPPORT FOR THOSE ALLEGATIONS**

Plaintiff's counsel provides no information regarding the inquiry or discovery that led Attorney Luzi to allege, in paragraphs 72 and 73 of the Complaint, that *Severson told Schroeder on August 13, 2013* that he would be able to return to work "with restrictions" or "in a light duty position" "immediately after his surgery." Plaintiff's counsel suggests that Severson's deposition testimony supported this allegation. However, Severson denied making such a comment during this conversation, and indicated that the summary of his conversation with Schroeder on that date contained in the ERD positon letter (drafted by Attorney Luzi) was accurate. That summary contained no mention of any interest in or ability to return to work in a light duty capacity during the course of that conversation, nor was such a conversation on any other date referenced in that

Case 2:14-cv-01141-LA   Filed 08/19/15   Page 11 of 15   Document 37

positon letter. (*See*: Severson Dep. pp. 34-35, and Severson's ERD positon letter attached as Exh. F to the Affidavit of David A. McClurg)

Severson's testimony suggesting that he raised the issue of light duty work with Schroeder on some date other than August 13, 2013 is not credible, and does not support the factual allegations on this subject that Plaintiff's counsel included in the Complaint. Plaintiff's response to the Rule 11 Motion suggests that Severson testified that he had a conversation with Schroeder about light duty work on July 30, 2013. However, a review of his testimony reveals that he made this statement while looking at the wrong page of the Interrogatory responses drafted by his attorneys. (See: pp. 27-31 of the Severson deposition, attached as Exh. K to the Supplemental Affidavit of David A. McClurg in Support of Defendant's Rule 11 Motion filed herewith)("Supp. Severson dep.)

When Severson was being questioned about his interrogatory response relating to his July 30, 2013 conversation with Schroeder, he was inadvertently looking at his attorney's response relating to the August 13, 2013 conversation. (Supp. Severson dep. pp. 29-30) It is clear from the context that Severson's testimony at that point of the deposition (i.e. that he told Schroeder on July 30th that he might be able to perform light duty work) was based on the fact that he was reading the portion of the Interrogatory response prepared by his counsel relating to the August 13th conversation. (Supp. Severson dep. p. 30, lines 1-15) He went on to confirm that the Interrogatory response relating the July 30 conversation made no reference to the possibility of light duty work. He did not attempt to change that answer and his Interrogatory answer has not been amended to indicate otherwise. As noted above, Severson subsequently denied mentioning light duty work in the August 13th conversation.

Severson later testified that he may have spoken with Schroeder about light duty work in a phone conversation "a couple of days" *after* his appointment with Dr. Hollowell and his related telephone conversation with Schroeder on August 13, 2013. (Supp. Severson Dep. p. 74) However, Severson has no record of any such conversation (Supp. Severson Dep. p. 73), and his own phone records show that he had no conversations with Schroeder between August 13, 2013 and August 26, the day he was informed of his termination. (McClurg Aff. ¶ 10) Given the significant inconsistencies in Severson's testimony on this subject, and the fact *the allegations in paragraphs 72 and 73 of the Complaint are inconsistent with Severson's admission that he*

12

*asked to be put on extended FMLA leave during the two month period following his surgery*, his testimony is not credible, and does not support a defense to Defendant's Rule 11 motion.

Further, irrespective of Severson's deposition testimony, Plaintiff's counsel provides no indication that Attorney Luzi performed any reasonable inquiry on this subject before signing and filing the Complaint. Consequently, Rule 11 sanctions are appropriate.

## V. PLAINTIFF'S NON-SUBSTANTIVE EQUITABLE OBJECTIONS TO DEFENDANT'S RULE 11 MOTION ARE IRRELEVANT AND DO NOT NEGATE THE PROPRIETY OF SANCTIONS UNDER THE CIRCUMSTANCES OF THIS CASE

Plaintiff's counsel raises some of the same non-substantive arguments to Heartland's Rule 11 Motion that they asserted in opposition to its Motion for Partial Summary Judgment:

1. Defendant's Rule 11 Motion is inappropriate because Severson's counsel "agreed" to withdraw the FMLA Interference claim, and "reassess" its positon on the FMLA retaliation claim;

2. Defendant filed the Motion for Rule 11 Sanctions before the discovery cut off and without consulting plaintiff's counsel regarding their willingness to withdraw the FMLA claims and unsupported factual allegations; and

3. After filing its Motion for Sanctions Pursuant to Rule 11, Defendant refused agree to a stipulation allowing Plaintiff to amend his Complaint to withdraw the FMLA claims and modify the unfounded factual allegations unless the stipulation preserved Defendant's right to pursue its Motion for Rule 11 Sanctions.

Defendant incorporates the responses it set forth in Section I, above to these objections, and adds the following comments.

Plaintiff's counsel's suggestion that the Rule 11 Motion is premature because it was made before the conclusion of discovery is unsupportable for several reasons. First, a Rule 11 Motions evaluates whether the claims or assertions in a filing were warranted *at the time they were made*. It is not designed to evaluate whether the party presenting the claims was able to develop supporting evidence through discovery unless the pleading *"specifically identifies"* that the submitting party expects that the *"factual contentions…will likely have evidentiary support after a reasonable opportunity for further*

13

*investigation or discovery*." (Rule 11(b)(3)) There is no such "identification" in any of the Complaint paragraphs that are the subject of Plaintiff's Rule 11 Motion.

Second, a party served with a Rule 11 Motion is only protected from sanctions if it withdraws the unsupported claims or allegations within the 21-day safe harbor period – not if they wait until discovery is ended. Here, as indicated in Defendant's principal brief, Plaintiff's counsel had compelling reasons, based on the extensive discovery they had undertaken at that point, to withdraw the unsupported allegations within the 21-day safe harbor period. They chose not to do so within that period or for the next 49 days, thus forcing Defendant to file its Rule 11 Motion seeking to have the allegations stricken.

Third, the 7th Circuit has held that Rule 11 motions should be filed "as soon as practicable after the discovery of a Rule 11 violation" and that parties that fail to file their Rule 11 motions may waive their rights to pursue sanctions. *Sullivan v. Hunt*, 350 F.3d 664, 666, 57 Fed.R.Serv.3d 305 (7th Cir., 2003). This stricture has been cited repeatedly by the district courts in this Circuit,[1] including in *Jackson v. Mckay–Davis Funeral Home*, 2012 WL 5423739 (E.D. Wis., 2012) where the court stated:

> Also before the Court is the plaintiffs' motion for Rule 11 sanctions against McKay–Davis for filing what it terms a "frivolous motion seeking reconsideration of the Court's ruling on Summary Judgment." Pursuant to Rule 11's safe harbor provision, Fed.R.Civ.P. 11(c)(2), plaintiffs served McKay–Davis with a copy of their motion on January 3, 2012, but did not file it until August 20, five days after Judge Gorence denied McKay Davis's motion to reconsider. The Rule 11 motion is untimely because a motion for sanctions should be filed "as soon as practicable after discovery of a Rule 11 violation." *Sullivan v. Hunt,* 350 F.3d 664, 666 (7th Cir.2003)...... "If a party's action is 'abusive' as contemplated by Rule 11, the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law.

In this case, it became clear that Plaintiff had no evidence to support his FMLA claims or his allegations that he was able to return to work "immediately" after his surgery based on the admissions made by Raymond Severson in his deposition on May 2, 2015, and the testimony of his wife in her deposition taken on the same day. Consequently, Defendant served its Rule 11 Motion on Plaintiff's counsel on May 7,

---

[1] See: *Northern Illinois Telecom, Inc., v. PNC Bank, NA,* 2015 WL 1943271 (N.D. Ill, 2015); *Philos Technologies, Inc. v. Philos & D, Inc.,* 943 F.Supp.2d 880 (N.D. Ill., 2013)

2015. Although Defendant could have served its Rule 11 Motion immediately after the expiration of the 21-day safe harbor period, it gave Plaintiff's counsel the professional courtesy of delaying the filing of the Motion until after the completion of Plaintiff's requested deposition of Heartland General Manager, Doug Lawrence, the third Heartland representative involved in the decision to terminate Severson. Defendant only filed its Rule 11 Motion when Plaintiff's counsel left the FMLA claims in the complaint for more than two weeks after Mr. Lawrence's deposition testimony further confirmed that Heartland had a legitimate, non-retaliatory and non-pretextual reason for Severson's termination.

## CONCLUSION

Severson's FMLA claims must be dismissed, the unfounded factual allegations in his Complaint stricken and Rule 11 sanctions, including attorneys fees, imposed because Plaintiff's counsel: 1) knew or should have known that these claims and allegations lacked evidentiary support when the Complaint was signed and filed; and 2) provided no evidence that Attorney Luzi conducted any inquiry to determine if the FMLA claims were "warranted" as required by Rule 11 or if there was any evidentiary basis for the contested factual allegations contained in paragraphs 72, 73, 90 – 96, and 98 – 105 of Plaintiff's Complaint.

PETRIE + STOCKING
Attorneys for Defendant Heartland Woodcraft, Inc.

BY: David A. McClurg

David A. McClurg
S.B.W. # 1009730
PETRIE + STOCKING
111 E. Wisconsin Ave., Suite 1500
Milwaukee, WI 53202
TEL: (414) 276-2850
FAX: (414) 276-0731
EMAIL: dmcclurg@petriestocking.com